**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITY POLICE AND FIRE PROFESSIONALS OF AMERICA RETIREMENT FUND, individually and on behalf of all other similarly situated stockholders,<br><br>       Plaintiff,<br><br>   v.<br><br>PFIZER, INC., as successor-in-interest to WYETH, a Delaware corporation, ROBERT ESSNER, BERNARD POUSSOT, KENNETH J. MARTIN, GREG NORDEN, and ROBERT R. RUFFOLO, JR.,<br><br>       Defendants. | Civil Action No. 10-cv-3105 (SDW)(MCA)<br><br><br><br>**OPINION**<br><br><br><br>October 25, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants Pfizer, Inc., as successor-in-interest to Wyeth, a Delaware Corporation, Robert Essner, Bernard Poussot, Kenneth J. Martin, Greg Norden, and Robert R. Ruffolo, Jr.'s (collectively "Defendants") Appeal from Magistrate Judge Madeline Cox Arleo's Order denying its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). This Court has jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Venue is proper pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Defendants' Appeal and **AFFIRMS** Magistrate Judge Arleo's Order Denying Defendants' Motion to Transfer Venue.

## I.    BACKGROUND

This matter involves Security Police and Fire Professionals of America Retirement Fund, individually and on behalf of all other similarly situated stockholders ("Security Police" or "Plaintiff") and Pfizer, Inc., as successor-in-interest to Wyeth, a Delaware Corporation, Robert Essner, Bernard Poussot, Kenneth J. Martin, Greg Norden, and Robert R. Ruffolo, Jr.

On September 3, 2010, Defendants submitted a Motion to Transfer Venue, pursuant to 28 U.S.C. § 1404(a) ("Motion" or "Motion to Transfer").  Defendants sought to transfer the instant case, a federal securities fraud class action, to the United States District Court for the Southern District of New York where two other securities fraud actions have been filed against Defendants.  On April 5, 2011, upon balancing the various private and public factors articulated in case law pertaining to § 1404(a) analyses, Magistrate Judge Madeline Cox Arleo denied Defendants' Motion to Transfer in a letter order ("Letter Order").  On April 15, 2011, Defendants filed their appeal pursuant to Local Rule 72.1(c)(1)(A).  The issue before the Court concerns whether Magistrate Judge Arleo properly denied Defendants' Motion.

## II.    FACTS

Security Police filed a federal securities fraud class action arising out of the joint effort of Wyeth, Inc. ("Wyeth"), headquartered in New Jersey, and Elan Corporation, PLC ("Elan") to develop, market, and sell bapineuzumab ("B-Mab"), a compound with the potential to treat and potentially prevent Alzheimer's disease.  (Compl. ¶ 7, 39.)  As detailed in the Complaint, the two companies joined forces in April 2000.  (*Id.* ¶ 39.)  Before B-Mab could be sold on the open market, Wyeth and Elan needed regulatory approval, which could only be received by successfully showing B-Mab's safety and efficacy.  (*Id.* ¶ 5.)  This showing was to be established through a series of clinical trials that began in 2002.  (*Id.* ¶ 45.)

After determining that the results of the Phase 1 clinical trial were promising, Wyeth and Elan began Phase 2 testing, which was controlled by Wyeth employees in New Jersey.  (*Id.*; Jeff Almeida Decl., at Ex. E, M.).  In October 2006, Defendant Ruffolo, Wyeth's Head of Research and Development at its New Jersey headquarters, announced that Wyeth and Elan would examine the Phase 2 study results.  (Compl. ¶ 46.)  According to the companies, if those results satisfied "very specific criteria" related to safety and efficacy, they would consider beginning Phase 3 testing.  (*Id.* at 47.)

Security Police alleges that Defendants concealed material information and/or made false and misleading statements relating to the results of B-Mab's clinical testing, which when revealed, negatively impacted Wyeth's market performance.  (*Id.* at ¶¶ 34-36, 54-55.)  In particular, it claims that Wyeth, desperate for "good news," allegedly undertook a series of acts to mislead the market about B-Mab's progress.  (*Id.* at ¶ 38.)  For example, on May 21, 2007 (the start of the Class Period), Wyeth and Elan announced that they were commencing Phase 3 testing after determining that the Phase 2 testing results met the "very specific criteria," and thus were "spectacular."  (*Id.* at ¶ 48.)  On July 26, 2007, Wyeth, issued a press release from its New Jersey headquarters referencing its Phase 2 testing results as its basis for proceeding with Phase 3 testing.  (*Id.* at ¶ 49.)  At a May 1, 2008 presentation from its New Jersey headquarters, Wyeth made similar statements about its Phase 2 data being the catalyst for Phase 3 testing.  (*Id.* at ¶ 50.)  On June 17, 2008, Wyeth issued another press release from its New Jersey offices, announcing that the complete Phase 2 testing results were "encouraging" and supported the companies' hypothesis that B-Mab could successfully treat Alzheimer's disease.  (*Id.* at ¶ 53.)  Wyeth's shares rose 4.83% based on these statements.  (*Id.*)

On July 29, 2008, Wyeth presented the complete Phase 2 testing results at the Alzheimer's Association's International Conference.  (*Id.* at ¶ 54.)  The results were allegedly calamitous, and led to the plummet of Wyeth's stock price.  (*Id.* at ¶¶ 54-55.)

    A.    *The New Jersey Actions*

On June 18, 2010, Security Police filed the instant federal securities fraud action, individually and on behalf of all other similarly situated purchasers of Wyeth securities between May 21, 2007 and July 28, 2008.  Security Police has named Pfizer, as a successor-in-interest to Wyeth, as a Defendant, in addition to five former Wyeth officers and/or directors—Defendants Essner, Poussot, Martin, Norden, and Ruffolo.  (Compl. ¶¶16-22.)  Security Police asserts that Defendants' alleged concealment of material information and/or release of false and misleading statements with regard to B-Mab's clinical testing results violated sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act").

    B.    *The New York Actions*

Holders of Elan securities filed two separate actions in the Southern District of New York based on the same alleged misleading statements about B-Mab's clinical trial results at issue in the instant case.  On October 14, 2008, Plumbers & Steamfitters Local 773 Pension Fund (the "P&S Fund") filed a securities fraud action, individually and on behalf of all purchasers of Elan securities, between May 21, 2007 and October 21, 2008 (the "Elan Class Period"), against Elan; G. Kelly Martin, Elan's President and Chief Executive Officer; and Lars Ekman, Elan's Chairman of the Science and Technology Committee (collectively the "Elan Defendants"). (Elan Compl., ¶¶ 1, 23.)  The Plumbers Fund alleges violations of section 10(b), Rule 10b-5, and section 20(a) of the Exchange Act.

On July 23, 2010, one month after Security Police filed the instant action, Gary Kleinman ("Kleinman"), a purported purchaser of Elan call options, sued the Elan Defendants and Pfizer (as a successor-in-interest to Wyeth), and Wyeth, on behalf of all purchasers of Elan call options between June 17, 2008 and July 29, 2008.  The securities fraud suit is based on Elan and Wyeth's false statements about the B-Mab clinical test results.  (Kleinman Compl. ¶¶ 1, 2.) Kleinman alleges violations of sections 10(b) and 20(a) of the Exchange Act.

On August 2, 2010, having determined that the Kleinman action is related to the P&S Fund action, which was already pending before District Judge Alvin Hellerstein, the Clerk of Court for the Southern District of New York assigned the Kleinman action to Judge Hellerstein. *See Kleinman v. Elan Corp.*, PLC, No. 10-5630 (S.D.N.Y. Aug. 2, 2010), ECF No. 2).

Thereafter, Defendants filed a Motion to Transfer Venue to the Southern District of New York.  Magistrate Judge Arleo denied the Motion and Defendants filed the instant appeal.

## III.   LEGAL STANDARD

A magistrate judge's ruling on transfer of venue to another district is considered non-dispositive as it does not reach the merits of the case.  *Stephen L. LaFrance Pharmacy, Inc. v. Unimed Pharm., Inc.*, 2009 WL 3230206 (D.N.J. Sept. 30, 2009).  To overturn non-dispositive rulings, such as the denial of Defendants' Motion to Transfer, there must be a finding that the ruling was contrary to law or "clearly erroneous."  28 U.S.C. § 636(b)(1)(A) (2006) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); *Siebert v. Norwest Bank Minn.,* 166 F. App'x 603 (3d Cir. 2006) (affirming a district court's review of a magistrate judge's order under the "clearly erroneous" standard where the determination was non-dispositive).  Thus, Judge Arleo's decision to deny transfer of venue must stand unless this court finds it was "clearly

erroneous or contrary to law." *Id.*; *Hitachi Cable Am., Inc. v. Wines*, 1986 WL 2135 (D.N.J. Feb. 14, 1986).

## IV.   DISCUSSION

    A.    *Transfer of Venue under 28 U.S.C. § 1404(a)*

Under Title 28, § 1404(a) of the United States Code, district courts may transfer civil actions to any other districts where venue would have been proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2006). The purpose of § 1404(a) is twofold: first, to avoid wasting "time, energy and money[,]" and second, to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960).

A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995). The party seeking transfer bears the burden of establishing that transfer is necessary. *Id.* The moving party must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000).

The decision of whether to transfer a case is committed to the trial court's sound discretion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (discussing the trial court's discretion under § 1404(a) to adjudicate motions to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). In determining whether to grant a motion to transfer pursuant to §

1404(a), a reviewing court must first make a threshold determination as to whether the action could have been properly brought in the transferee district.  *Id.* at 570; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  The movant must demonstrate "the proprietary of venue in the transferee district and jurisdiction over all of the defendants."  *LG Elec., Inc. v. First Int'l Computer, Inc.*, 102 F. Supp. 2d 574, 586 (D.N.J. 2001).  After the court determines that the jurisdiction and venue would be proper in the transferee district, the court must evaluate two broad categories of factors identified by the Third Circuit Court of Appeals.  *Jumara*, 55 F.3d at 879-80.

The first category includes considerations relevant to the private interests of the litigants. *Id.* at 879.  Important private interests are: (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum."  *Id.* (internal citations omitted).

The second broad category includes the public's interests in a fair and efficient administration of justice. *Id.* at 879-80.  Considerations here include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;"(3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6)"the familiarity of the trial judge with the applicable state law in diversity cases."  *Id.* (internal citations omitted).

Neither list of public nor private factors is exhaustive; rather, the analysis under §

1404(a) is flexible and individualized, based on the unique facts of each case.  *Lawrence v.*

*Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999).  Here, Defendants bear the burden of

persuasion to show that "the proposed alternative forum is not only adequate, but also more

convenient than the present forum."  *Id.* at 451.

As a threshold matter, it is undisputed that venue would be proper in the Southern District

of New York had the case been brought there.  In its Complaint, Plaintiffs alleged venue was

proper in the District of New Jersey pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, as

well as the general federal venue statute, 28 U.S.C. § 1391.  The Exchange Act has its own

venue and jurisdiction provision, which states in relevant part:

> [A]ny suit or action to enforce any liability or duty created by this
> chapter or rules and regulations there under, or to enjoin any
> violation of such chapter or rules and regulations, may be brought
> in any such district[,] [in any district wherein any act or transaction
> constituting violation occurred] or in the district wherein the
> defendant is found or is an inhabitant or transacts business.

15 U.S.C. § 78aa (2006).

Based on this provision, there is no dispute that the action is properly venued in this

District or that this Court can exercise personal jurisdiction over Defendants.  As determined in

Judge Arleo's order, this Court agrees that the Southern District of New York is a district where

this action might have been brought. There is no dispute that the Southern District of New York

has the requisite jurisdiction over this case, is a proper venue to adjudicate this case, and thus is a

proper alternative forum.  However, the instant dispute centers on the convenience of the parties

and on the interests of justice.

B.       *Defendants Arguments on Appeal*

The Defendants proffer three main arguments on appeal.  With regard to the private interest factors, Defendants argue that the Letter Order erroneously turned solely upon a determination that New Jersey was the "center of gravity."  (Defs.' Reply 1, 10.)  Defendants also dispute whether they have the burden of proving New York would be a more convenient forum for witnesses.  (Defs.' Reply 9-10.)

With regard to the public interest factors, Defendants argue that the Letter Order "incorrectly found that the failure to transfer this action would not subject Pfizer . . . to the risk of inconsistent adjudications."  (Defs.' Br. 2.)  In making this assertion, Defendants argue that Judge Arleo overlooked "extensive precedent" that has otherwise found transfer to be appropriate where it is necessary to avoid inconsistent results and duplicative litigation.  (*Id.* at 14.)  Defendants also argue that the Letter Order should be overturned because it "is based, in significant part, on the incorrect finding that transfer to New York 'could potentially result in delay' because of the need to consider the effects of a recent Supreme Court decision on the claims against Elan as an issuer of securities traded on a foreign exchange."  (Defs.' Br. 2.)  On a related note, Defendants lastly argue that Judge Arleo "neglects to take account of the well-settled precedent" recognizing the considerations of "judicial economy and conservation of resources as a compelling justification for transfer."  (*Id.* at 3.)

C.       *Analysis*

         i.       *Private Interest Factors*

In her Letter Order, Judge Arleo did not reach all private interest factors.  Rather, she focused on the plaintiff's choice of forum, defendants' forum preference, where the claims arose, and the convenience of the witnesses.

As to the first factor, Judge Arleo found that a plaintiff's choice of forum is generally given great weight in an analysis under § 1404(a).  *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989). Plaintiffs are not New Jersey residents, which would ordinarily mean that their choice is "accorded less weight."  *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998).  However, "[a]s a general rule, the preferred forum is that which is the center of gravity of the accused activity." *Id.*; *see Van Cauwenberghe v. Biard*, 486 U.S. 517, 518 (1988) (noting that a court determines the origin of a claim by looking to the "locus of the alleged culpable conduct.").

Defendants argue that the Letter Order erroneously relied upon a "center of gravity" approach in reaching the determination that transfer would not be appropriate in the instant matter.  (Defs.' Reply 10.)  Defendants base their argument on the misunderstanding that "center of gravity" is only to be used for analyses in *forum non conveniens* matters.  (*See* Defs.' Reply 1.)  Judge Arleo's determination that New Jersey is the center of gravity of the accused activity was not erroneous.  The "center of gravity" is a reference to where most of the alleged events occurred and is not confined to *forum non conveniens* analyses.  *NCR Credit Corp.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998) (discussing "center of gravity" in the context of 1404(a)).  Judge Arleo found: (1) that during the Class Period, Wyeth maintained its headquarters in New Jersey and the individual defendants maintained offices in New Jersey, and (2) that Wyeth conducted many of the clinical trials for the B-Mab in New Jersey and issued many of the allegedly misleading and false press releases from New Jersey.  As such, Judge Arleo was not clearly erroneous in finding that New Jersey is the locus of Defendants' alleged liable conduct.  Thus, this factor weighed against a transfer of venue.

With regard to where the claims arose, this Court has already determined that most of the clinical trials and misleading statements arose in New Jersey, and the center of gravity of the parties' dispute is New Jersey.  *See Park Inn Int'l, L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000) (noting that the inquiry turns on which forum contains the center of gravity of the dispute, its events, and transactions).  Therefore, Judge Arleo correctly found that this factor militates against transfer.

Although Judge Arleo acknowledged that the alleged fraudulent scheme that gives rise to the New York actions is present in the instant action, Judge Arleo found that this alone did not warrant transfer.  She refuted Defendants' argument that New York is the center of gravity by virtue of the pending New York actions.  Not only is New Jersey the center of gravity of the parties' dispute, there are no common plaintiffs between the New Jersey and New York actions.  Although Wyeth is named as a defendant in both the instant action and Kleinman action, the latter action was brought on behalf of purchasers of Elan call options, while the instant action was brought on behalf of purchasers of Wyeth securities.  As discussed above, the "center of gravity" approach was not used erroneously, and Judge Arleo's finding must stand.

As to convenience of the Defendants, Judge Arleo found that this factor weighed in favor of transfer to the Southern District of New York because Pfizer was headquartered in New York City and one individual resided in New York; furthermore, none of the remaining Defendants objected to transfer.  This point is undisputed, and this Court agrees.

Regarding the convenience of witnesses, Judge Arleo found that factor to be neutral, stating, "There is no evidence that any witnesses for either party would be totally unavailable to testify in New Jersey as opposed to merely being inconvenienced by the distance."  (Letter Order 6.)  Defendants, however, argue that they did not need to show "witness convenience" and

because it is "irrelevant on this transfer motion." (Defs.' Reply 9-10.)  It is clear from case precedent that convenience of the witnesses is a factor that is weighed amongst various private interest factors.  *See, e.g.*, *Jumara*, 55 F.3d at 882.  Furthermore, the Third Circuit has explicitly stated that defendants have the burden of proof to "support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)."  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57.[1]  Thus, this Court agrees that the Defendants have failed to meet their burden of persuading on this factor.

       *ii.*     *Public Interest Factors*

The crux of Defendants' appeal centers on the risk of duplicative proceedings and inconsistent determinations between the New Jersey action and New York actions.  Specifically, Defendants contend that the facts and legal claims giving rise to the instant action are virtually identical to those pending in the Southern District of New York, and therefore, involve substantially overlapping issues and claims.  Defendants argue that transfer would create judicial efficiency and avoid inconsistent determinations by resolving all three actions together.  Defendants argue that because of the overlapping claims and issues, upholding Judge Arleo's decision to deny the Motion would lead to "prejudicial consequences from overlapping, if not completely duplicative litigation."  (Defs.' Reply 5.)

---

[1] With regard to the convenience of witnesses, the *Plum Tree* court noted:

> Examples of such documents would be a list of the names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving parties of the business difficulties or personal hardships that might result from their having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate.

*Plum Tree, Inc.*, 488 F.2d at 757, n.2; *see also Bachmann Software & Servs. v. Intouch Group, Inc.*, 2008 U.S. Dist. LEXIS 55719, at *39 (D.N.J. July 22, 2008) ("The party seeking transfer should support its motion with affidavits and other documentation that establishes that the interests of justice and convenience of the parties would best be served by a transfer.") (citing *Plum Tree, Inc.*, 488 F.2d at 756-757).

In support of their argument, Defendants cite to *Hitachi Cable Am., Inc. v. Wines*, 1986 WL 2135 (D.N.J. Feb 14, 1986), in which a court vacated a magistrate's denial of a motion to transfer where the cases involved had virtually identical issues. *Hitachi* is distinguishable from the instant scenario for two reasons. First, the *Hitachi* court found that the magistrate judge was clearly erroneous based on a failure to correctly evaluate the threshold § 1404(a) question as well as both prongs evaluating public and private interest factors. Judge Arleo's Letter Order hardly reaches such a flawed level of reasoning. Second, in *Hitachi*, the witnesses and documents were all in Texas, to which the defendants sought transfer of venue. *Hitachi*, 1986 WL 2135, at *5. In the instant case, Defendants do not allege that witnesses and documents can only be found in New York. Further, Defendants have not argued that New York would be more appropriate than the present forum. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000).[2]

Defendants also argue that the Letter Order's reliance on *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 532 F. Supp. 2d 648 (D. Del. 2008) was misplaced. In *Boston*, Johnson & Johnson ("J&J") was a named defendant in a Delaware action and a plaintiff in a New Jersey action. *Id.* J&J argued that "practical considerations 'overwhelmingly favor' transferring" litigation to the District of New Jersey since both actions "involve exactly the same patents and exactly the same accused products." *Id.* at 654. The court found that J&J had not met its burden of demonstrating that the public interests weighed in its favor. The court stated,

---

[2] In their brief, Defendants state,

> Nowhere does the Letter Order identify any specific discovery that is not as easily ascertainable in the Southern District of New York, let alone any discovery that would be unavailable in New York. To the contrary, with certain Defendants resident [sic] in New York, it stands to reason that any discovery will be at least as convenient (and likely more so) to the parties and witnesses if this case were to proceed in New York rather than New Jersey.

(Defs.' Br. 17.) It is not the Court's burden to prove that discovery will or will not be ascertainable in another district, but to weigh the arguments presented by the parties. Here, Defendants had the burden of showing that New York was not just adequate, but more appropriate than the present forum. *Hoffer*, 102 F. Supp. 2d at 572. Blanket statements that discovery in New York will be "likely more" convenient is an inadequate showing.

"Although this case involves the same patents and products as those under consideration in New Jersey, [Boston Scientific Corporation] is not a party to that litigation." *Id.* at 655.  As in *Boston*, there is only one overlapping party here—Wyeth, which is named in this action and in the Kleinman action.  Judge Arleo used *Boston* to illustrate that when related cases involve different parties, there is no risk of inconsistent adjudication.  Defendants, however, misread *Boston* to stand for the proposition that where there are no overlapping defendants, there is no risk of inconsistency.  Thus, they mistakenly attempt to distinguish it from the present matter by virtue of the fact that Pfizer is a defendant in two actions and thus at risk for inconsistent judgments. (Defs.' Reply 6-7.)  However, this reasoning is flawed.  First, the statement was meant to stress that Plaintiffs, like Boston Scientific Corporation, are not a party to litigation in the other forum. Second, Defendants erroneously believe that one overlapping defendant can be equated to wholly overlapping parties.  Defendants have not demonstrated that there is a substantial risk of inconsistent judgments.  Thus, this argument, too, must fail.

Lastly, Defendants argue that transfer is needed to preserve the interests of judicial economy and efficiency.  They argue that Judge Arleo was mistaken in believing that new case law would potentially delay the New Jersey action and also claim that Judge Arleo failed to consider judicial economy as a compelling justification for transfer.  With regard to their first argument, Defendants' appeal takes issue with Judge Arleo's findings that (1) *Morrison v. National Bank of Australia, Ltd.*, 130 S. Ct. 2869 (2010) has no impact on the claims that were brought against Defendants in the District of New Jersey, and (2) that *Morrison* places the New York actions on a different procedural track than the instant action.  *Morrison* impacted whether New York plaintiffs and a putative class of purchasers of Elan American Depository Receipts and call options may proceed with their claims for section 10(b) violations against Elan

Corporation, a foreign corporation.  As such, Elan Corporation moved to dismiss the New York complaints for failure to state a claim in light of the Supreme Court ruling in *Morrison*.

This Court agrees that *Morrison* would not have impacted the instant action as the New Jersey action concerns common shares of a United States issuer, Wyeth, which were traded almost exclusively on a United States exchange rather than a foreign exchange.  Furthermore, the docket shows that Judge Arleo was well acquainted with Judge Hellerstein's order to dismiss the complaints against Elan under *Morrison*.  (Letter Order 7; Defs.' Letter, ECF No. 40, 42; Pl.'s Letter, ECF No. 41.)  Whereas the Defendants were ordered to file motions to dismiss by April 6, 2011, with briefing to be completed by April 27, 2011 (Defs.' Letter, ECF No. 40.) in the Southern District of New York, Plaintiffs in the District of New Jersey were given 45 days after the Motion to Transfer was decided to file their first consolidated amended complaint.[3]  (Pl.'s Letter, ECF No. 41.)  Therefore, notwithstanding the effect of *Morrison* on New York claimants, Judge Arleo was concerned with delay due to procedural issues on the New Jersey claim.

With regard to their second argument, Defendants claim that Judge Arleo neglected to consider "judicial economy and conservation of resources as a compelling justification for transfer."  (Defs.' Br. 3.)  This merely reiterates the *Morrison* issue.  It is sufficient to say that Judge Arleo was not clearly erroneous in finding that transfer could potentially result in a delay in adjudicating this case, which would fail to conserve judicial resources by transfer.  Furthermore, Defendants harp upon the issue of judicial economy as though it is a dispositive factor in the § 1404(a) analysis.  Instead, it is one among many factors that a judge is given discretion to evaluate.  *Jumara v. State Farm Ins.*, 55 F.3d 873 (3d Cir. 1995); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442 (D.N.J. 1999).  Ultimately, Defendants have not shown that the public interest factors weigh strongly in favor of transfer.

---

[3] Defendants have filed a Motion to Dismiss which is currently pending before this Court.

Using the clearly erroneous standard of review, this Court must have the "definite and firm conviction that a mistake has been committed." *Stephen L. LaFrance Pharmacy, Inc. v. Unimed Pharm., Inc.*, 2009 WL 3230206 (D.N.J. Sept. 30, 2009) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Though the pendency of similar litigation against a defendant in two fora may be less convenient for the defendant, and though Courts have held in favor of transferring cases to other fora where similar or identical actions are pending, transfer analyses are highly fact and factor specific inquiries. *See, e.g.*, *Jumara v. State Farm Ins.*, 55 F.3d 873 (3d Cir. 1995); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442 (D.N.J. 1999). Based on the factors that Judge Arleo carefully delineated and weighed, it cannot be said that her holding was mistaken or clearly erroneous. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988) (discussing the "flexible and individualized analysis" under § 1404(a)).

**V.     CONCLUSION**

For the reasons stated above, this Court **DENIES** Defendants' Appeal and **AFFIRMS** Magistrate Judge Arleo's Order Denying Defendants' Motion to Transfer Venue.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties