UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
SECURITY POLICE AND FIRE            :
PROFESSIONALS OF AMERICA            :
RETIREMENT FUND, individually       :
and on behalf of all other similarly situated :
stockholders,                       :
                                    :
                                         : Honorable Madeline Cox Arleo
      Plaintiff,                         : Civil Action No. 10-3105 (SDW)
                                         :
      v.                               : **REPORT AND RECOMMENDATION**
                                         :
PFIZER, INC., as successor-in-interest to :
WYETH, a Delaware corporation,      :
ROBERT ESSNER, BERNARD              :
POUSSOT, KENNETH J. MARTIN, and     :
ROBERT R. RUFFOLO, JR.,             :
                                    :
      Defendants.                  :
_____:

Before this Court is the motion of Lead Plaintiffs, The City of Edinburgh Council, as Administering Authority of the Lothian Pension Fund ("Lothian") and Arca S.G.R. S.p.A. ("Arca")[1] (collectively "Lead Plaintiffs"), individually and on behalf of all other persons and entities who purchased Wyeth, Inc. ("Wyeth") common stock between May 21, 2007 and July 29, 2008, inclusive (the "Class Period") to file a second amended consolidated complaint[2]

---

[1] On June 18, 2010, plaintiff Security Police and Fire Professionals of America Retirement Fund ("Security Police") filed the instant putative class action, individually and on behalf of all other similarly situated stockholders of Wyeth. Under the Private Securities Litigation Reform Act of 1994 ("PSLRA"), Lothian and Arca moved to be appointed Lead Plaintiffs. On October 13, 2010, this Court entered a stipulation and appointed them as Lead Plaintiffs.

[2] Although in their motion papers Lead Plaintiffs refer to the proposed pleading as an "amended complaint," the Court notes that Lead Plaintiffs had previously filed a consolidated amended complaint on May 27, 2011. As such, Lead Plaintiffs now seek to file a second amended consolidated complaint (hereinafter referred to the "SACC").

pursuant to FED. R. CIV. P. 59(e) and 15(a). (Dkt. Entry 69). Defendants Pfizer, Inc., as successor-in-interest to Wyeth[3] ("Pfizer"); Robert Essner; Bernard Poussot; Kenneth Martin; Greg Norden; and Robert Ruffolo, Jr. (sometimes collectively "Defendants") oppose the motion. Judge Wigenton referred the motion to me for Report and Recommendation. No oral argument was heard pursuant to FED. R. CIV. P. 78.

Having considered the parties' submissions, for good cause shown, and for the reasons set forth herein, this Court recommends that Lead Plaintiffs' motion be **GRANTED**.

**I.      BACKGROUND**

The facts and procedural history relevant to this case are well known to the parties and were recited by Judge Wigenton in her written Opinion of February 10, 2012 ("February 10th opinion") (Dkt. Entry 63), in connection with Defendants' motion to dismiss the consolidated amended complaint pursuant to FED. R. CIV. P. 12(b)(6). Because the Court writes only for the parties' benefit, it does not reiterate those facts and procedural history herein. The Court highlights, however, the following facts and recent procedural history as they bear on the Court's analysis.

In her February 10th opinion, Judge Wigenton granted defendants' motion to dismiss and terminating the civil action as memorialized in the Order of February 10, 2012 ("February 10th order"). The February 10th order, however, did not specify whether the dismissal was with or without prejudice.

Lead Plaintiffs informally moved to file the SACC pursuant to FED. R. CIV. P. 15(a). According to Lead Plaintiffs, in opposing the prior motion to dismiss, they specifically sought

---

[3] In October 2009, Pfizer acquired Wyeth, which became a subsidiary of Pfizer.

2

leave to amend in the event the Court granted Defendants' motion to dismiss.  According to Lead Plaintiffs, they were entitled to file a SACC, under Rule 15(a), because the February 10th order did not address whether an amendment would be futile or unduly prejudice Defendants.

In opposition, Defendants argued that Judge Wigenton's dismissal was with prejudice, and thus a final judgment pursuant to FED. R. CIV. P. 41(b).  Accordingly, Defendants stated that Lead Plaintiffs' only option was to seek to amend the judgment pursuant to FED. R. CIV. P. 59(e) and 60(b).  Defendants claimed that, in any event, Lead Plaintiffs' failure to submit a proposed amended pleading was fatal to their request.

## II.     INSTANT MOTION TO AMEND

On March 2, 2012, Lead Plaintiffs filed the instant motion with the proposed SACC is attached.  Lead Plaintiffs argue that the SACC contains: (1) new and additional particularized facts that demonstrate the falsity of Defendants' public statements, some of which are supported by a newly identified second confidential witness ("CW 2"); and (2) new specifically alleged facts from an economic consultant that demonstrate the materiality of the false and misleading statements and omissions of Defendants.  Thus, according to Lead Plaintiffs, the motion should be granted under either the standards governing Rule 15(a) or Rule 59(e).

In opposition, Defendants contend that the amendment would be futile because Lead Plaintiffs have not (and cannot) point to any changes in the alleged actionable statements by Defendants.  At most, Defendants submit that the proposed amended pleading supplies slightly more detail about Lead Plaintiff's existing theory of the case, which the Court has already rejected as a matter of law.  As such, Defendants urge the Court, pursuant to Rule 59(e), to give effect to the finality of the judgment by dismissing this case with prejudice.

### III. DISCUSSION

The Court's analysis turns on the interplay between Rule 59(e) governing motions to amend the judgment and Rule 15(a) which governs motions to amend the pleadings before final judgment is entered.

#### A. Legal Standard

The Third Circuit has stated that "[a] district court may enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007)). A proper request for leave to amend the complaint, before final judgment is entered, includes a plaintiff's submission of a "draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp.*, 482 F.3d at 253. The Third Circuit has held that failure to provide a proposed amended complaint is fatal to a plaintiff's request to amend the complaint. *Id.* (Internal citations omitted). After the district court enters judgment dismissing the complaint, "'a party may seek to amend the complaint (and thereby disturb the judgment) only through Federal Rules of Civil Procedure 59(e) and 60(b).'" *Burtch*, 662 F.3d at 230 (quoting *Fletcher-Harlee Corp.*, 482 F.3d at 252).[4]

Here, although Lead Plaintiffs did request leave to amend the complaint, they failed to submit a proposed SACC. Additionally, their request consisted only of the following sentence in the Conclusion section of their opposition brief: "[t]o the extent any portion [of the motion to

---

[4] There is no dispute among the parties that Rule 59(e), rather than Rule 60(b), governs the instant motion as Lead Plaintiffs formally moved to amend on March 2, 2012 within 28 days after the entry of judgment on February 10, 2012, as required by Rule 59(e).

dismiss] is granted, Lead Plaintiffs request leave to amend." (Opp Bf at 30 Dkt. Entry 56). Thereafter, final judgment dismissing the complaint was entered. As such, only Rules 59(e) or Rule 60(b) provide Lead Plaintiffs with a potential window to "reopen the judgment and amend the complaint." *Burtch*, 662 F.3d at 230.

Under Rule 59(e), "'[a] motion to alter or amend the judgment must be filed no later than 28 days after the entry of the judgment.'" *Burtch*, 662 F.3d at 230 (quoting Fed. R. Civ. P. 59(e)). Motions filed under Rule 59(e) are triggered when a final judgment has been entered. *Id.* at 230 n.8. "Where an order 'd[oes] not specify that the dismissal was without prejudice,' under Fed. R. Civ. P. 41(b), the dismissal 'operates as an adjudication upon the merits.'" *Id.* (*Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). A motion brought under Rule 59(e) must rely on one of the following three bases: "'(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.'" *Burtch*, 662 F.3d at 230 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

In this Circuit, "'where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors.'" *Id.* (quoting *In re Adams Golf, Inc., Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004)). Under Rule 15(a), leave to amend may be denied for reasons such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ; *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984).

Rule 15(a)(2) provides that "[t]he court shall freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). However, the Third Circuit has noted that this liberality "'is no longer

5

applicable once judgment has been entered' because Rule 15(a) and 59(e) should not be employed in a manner contrary to 'favoring finality of judgments and the expeditious termination of litigation . . . . that would render those provisions meaningless.'" *Burtch*, 662 F.3d at 230 (quoting *Ahmed v. Dragovich*, 297 F.3d 201, 208 (3d Cir. 2002)). Nonetheless, in *Burtch*, the Third Circuit explained that it is appropriate to consider both the Rule 59(e) and Rule 15(a) motions together and "determine what outcome is permitted by consideration of the Rule 15(a) factors." *Id.* at 231.

Here, the thrust of Defendants' opposition is that the motion to amend is futile, and thus must be denied. "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). When applying the Rule 12(b)(6) standard, all well-pleaded facts in the complaint are accepted as true. *Heffernan v. Hunter*, 189 F.3d 405, 408 (3d Cir. 1999). Thus, in deciding whether the proposed amendments are futile, this Court must accept plaintiff's factual allegations as true and must make all reasonable inferences in plaintiff's favor.

**B.   Analysis**

To determine whether the SACC is futile, this Court must assess whether the additional allegations, based on new evidence, are sufficient to state federal securities fraud claims.

   *1.   May 21, 2007 Press Release*

According to Lead Plaintiffs, the SACC now identifies another former Wyeth executive, CW 2, who has first-hand knowledge of the Phase II Interim Results review and the company's basis for deciding to proceed to Phase II testing. (See SACC, at ¶ 54). CW 2 was also allegedly among those individuals asked to vet the June 17, 2008 Press Release before publication, but CW

2 was ignored when he expressed his views that the release put too positive a spin on the results. (Id. at ¶ 94). Additionally, CW 2 allegedly confirmed that Wyeth and Elan had agreed to proceed to Phase III testing only if the phase II Interim Results satisfied certain pre-specified efficacy criteria. (Id. at ¶ 54). Yet, according to CW 2, Wyeth and Elan ignored that agreement despite the complete failure of the Phase II Intern Results. (Id.)

Furthermore, Lead Plaintiffs now identify the specific statement in the May 21, 2007 Press Release ("May 21 Release") that was false rather than merely alleging the misleading nature of any statements as they had done in the amended consolidated complaint. As set forth in the SACC, the May 21 Release "falsely stated that the decision to commence Phase III testing of AAB-001 'was **based on . . . a scheduled Interim look at data from an ongoing Phase 2 study**' because the Phase II Interim look at the data was **not** among the reasons justifying Wyeth's move to Phase III testing." (SACC, at ¶ 55). Lead Plaintiffs allege that such a statement is demonstrably false, at the time it was made, because the Phase II Interim results were "abysmal," and failed the established criteria for the Phase II Interim Results review, as confirmed now by the CW 2. (*Id.*) Such allegations, along with additional allegations described with greater particularity, provide several reasons why the challenged statements are affirmatively false and misleading when made, rather than being merely cautionary or vague. (*See id.* at ¶¶ 54-66, 66-71). Thus, in short, Lead Plaintiffs contend that Wyeth falsely misled the investing public, by stating that the Phase II Interim look justified, even in part, the decision to initiate Phase III testing, when it, in fact, did not. (*Id.*) Lead Plaintiffs also state that they have repleaded the reasons Defendants had a duty to disclose material facts omitted from the May 21 Release, once Defendants said the decision to commence Phase III testing was "based on" the

Interim data. (*Id.* at ¶¶ 59-61).

In opposition, Defendants contend that, in the SACC, Lead Plaintiffs merely repeat the same allegations about the falsity of statements contained in the May 21 Release that Judge Wigenton already has rejected. According to Defendants, as Judge Wigenton pointed out, Lead Plaintiffs' logic "cannot hold true because of the cautionary language in the May 21 Press Release." (February 10th Op. at 10). In finding that Lead Plaintiffs have failed to state a claim for securities fraud, Judge Wigenton reasoned, in part, as follows:

> [P]laintiffs do not allege that there are any **specific** statements in the May 21 Press Release that are false or misleading, but rather allege that the announcement in the press release is misleading given Defendants' October 2006 statement. Accordingly, Plaintiffs allegations regarding Defendants' announcement to begin Phase III trials do not adequately allege a misstatement.

(*Id.* at 10).

Based on this Court's careful review of the SACC, the Court finds that Lead Plaintiffs now have sufficiently alleged specific affirmative statements of falsity in the May 21 Release to satisfy the first element in stating a claim for violation of section 10(b) of the Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.[5] Indeed, Lead Plaintiffs have now done more than merely allude to the misleading nature of the press release based on Defendants' earlier affirmative statements. Lead Plaintiffs allege in the SACC that the May 21 Release "falsely stated that the decision to commence Phase III testing of AAB-001 'was **based on . . . a**

---

[5] To state a claim for a violation of section 10(b) and Rule 10b-5 of the Exchange Act, Lead Plaintiff must allege that defendants: "(1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or the sale of a security; and (4) upon which [Lead Plaintiffs] reasonably relief and (5) that [Lead Plaintiffs'] reliance was the proximate cause of [their] injury." *In re Alpharma Inc. Securities Litig.*, 372 F.3d 137, 147 (3d Cir. 2004).

**scheduled Interim look at data from an ongoing Phase 2 study**....'" (SACC, at ¶ 55). The Court further finds that this allegedly false statement complies with the PSLRA's heightened pleading requirement of specifying each statement alleged to be misleading. *See* 15 U.S.C. § 78u-4(b)(1)(B).

Lead Plaintiffs have also satisfactorily complied with the PSLRA's pleading requirement to state the reasons why the alleged false statement is misleading with particularity. *See id.* In the SACC, Lead Plaintiffs allege that the May 21, 2007 statement is false because the Phase II Interim look at the data was **not** among the reasons justifying Wyeth's move to Phase III testing." (*Id.* at ¶ 55). Lead Plaintiffs further allege that such a specific statement is demonstrably false, at the time it was made, because the Phase II Interim results were "abysmal," and failed the established criteria for the Phase II Interim Results review. . . ." (*Id.*)

### 2.     *Post May 21, 2007 Statements and Omissions*

Lead Plaintiffs also assert that the SACC contains specific allegations as to why other class period statements and omissions made following the May 21 Release, including those contained in the June 17, 2008 Press Release ("June 17 Release"), were affirmatively false and misleading and/or why Defendants had a duty to disclose material facts omitted from such public statements. (*Id.* at ¶¶ 78-96). According to Lead Plaintiffs, Judge Wigenton found that Lead Plaintiffs failed to allege that their 10b-5 claim was based on any *affirmative* statements made by Defendants after the May 21 Release, including those allegations attributable to Defendants' conduct regarding the June 17 Release. As such, Lead Plaintiffs assert that Judge Wigenton analyzed all of the related allegations to support the claim as omissions by Defendants and whether they had a duty to close the information at issue.

9

In opposition, Defendants contend that, in reaching her decision to dismiss, Judge Wigenton specifically considered and rejected the same allegedly false and misleading allegations that Lead Plaintiffs again raise in the SACC. Defendants further contend that any new allegations are actionable as any of Defendants' affirmative statements were clearly disclosed in the context of any Phase II results being the product of post-hoc analyses.

After carefully reviewing the February 10th opinion, this Court concludes that Judge Wigenton considered Lead Plaintiffs' securities fraud claim, arising from the post-May 21 Release statements, including those contained in the June 17 Release, to be based solely on allegations that were "false or misleading because of omissions." (Feb. 10 Op. at 11 and 12). To the extent Lead Plaintiffs now assert that the securities fraud claim is based not only on omissions, but on false or misleading affirmative statements contained in post-May 21 Release statements, the Court finds that they have cured that deficiency not only by including the actual allegedly affirmative false statements made but also the reasons why those statements are misleading as required by the PSLRA in support of their claim.

By way of example, the SACC provides the explanation for why the statement made by Wyeth's Justin Victoria ("Victoria's) during the July 19, 2007 Analyst Conference Call (that "clearly our Interim analysis of the Phase 2 results was a component in the decision . . . in terms of moving into Phase 3") was affirmatively false and misleading statements of present fact. (*Id.* at ¶¶ 81-82). In the SACC, Lead Plaintiffs state that Victoria's affirmative statements were false for the same reasons the affirmative statements contained in the May 21 Release were false – i.e., "because the Phase II Interim look at the data was **not** among the reasons justifying Wyeth's move to Phase III testing." (*Id.* at ¶ 55). Lead Plaintiffs make similar accusations with other

post- May 21 Release statements, including, but not limited those made by Defendants on Wyeth's April 22, 2008 Earning Conference Call, the June 17, 2008 Release, and July 23, 2008 Conference Call. (*See id.* at ¶¶ 88-90, 91-96).

In short, based on the allegations in the SACC and this Court's review of Judge Wigenton's analysis and rulings, this Court cannot find that the amendment would be futile.

### 3. *Materiality Based On Stock Market and Economics Expert*

Finally, according to Lead Plaintiffs, they have cured their failure to demonstrate the materiality of the above-referenced challenged statements contained in the May 21, 2007 and June 17, 2008 Press Releases and other statements made during the class period by retaining a stock market and economics expert to properly establish materiality in their SACC. As detailed in the SACC, Lead Plaintiffs submit that their expert has provided objective economic data and analyses to show how Defendants' affirmative false statements concerning the Phase II Interim and final results during the Class Period were "highly material" to analysts and investors. (*Id.* at ¶¶ 97-112). Lead Plaintiffs state that these new allegations, coupled with the allegations regarding Wyeth stock analysts' ongoing commentary and questioning of the Phase II Interim Results review and decision to commence Phase III testing, demonstrate that Defendants' public statements were highly material to investors; were capable of causing highly statistically significant price swings in the stock price; and affected the total information available to investors. (*Id.* at ¶¶ 66-77).

Defendants counter that these alleged allegations of materiality do not warrant granting the amendment because Judge Wigenton's ruling did not hinge on a lack of materiality. According to Defendants, Judge Wigenton clearly rejected Lead Plaintiffs' allegations

concerning the May 21 Release statements because the Court found that Defendants did not have a duty to disclose the omitted information. (*See* Feb. 10th Op. at 10, 11-12). Defendants alternatively argue that Lead Plaintiffs' SACC provides no new allegations regarding the effect of Defendants' statements on Wyeth's stock price on investors. Rather, the SACC merely reiterates allegations contained in the consolidated amended complaint, (*see* ¶¶ 92. 128, 131), which Judge Wigenton found legally irrelevant. (*See* Feb. 10th Op. at 12 n.4) (noting that "Plaintiffs, [], have failed to present any basis, case law or otherwise, for their contention that market reaction is a factor in determining the falsity of a statement in the context of securities law.").

Defendants correctly point out that Judge Wigenton found that Lead Plaintiffs failed to argue the materiality of the information not disclosed in the May 21 Release. However, in so finding, the Court first emphasized the following, which bears on this Court's analysis herein. First, ordinarily, undisclosed information is deemed material if "'if there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having 'significantly altered the 'total mix' of information" available to that investor.'" (Feb. 10th Op. at 10-11) (quoting *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (Internal quotations omitted).

As noted above, this Court finds that Lead Plaintiffs have sufficiently alleged specific affirmative statements of falsity in the May 21 Release and post-May 21 statements, which satisfy the first element of a 10b-5 claim. As to the requisite materiality of such statements, the Court finds that Lead Plaintiffs have established the requisite materiality of these false affirmative statements by Defendants, by alleging new facts concerning statistically significant fluctuations in Wyeth's stock price, any why such information was objectively material to

investors when making investment decisions.  (*See* SACC at ¶¶ 97-112).

In highlighting the materiality standard, the Third Circuit in *Oran* noted that material information is "'information that would be important to a reasonable investor in making his or her investment decisions.'"  *See Oran*, 226 F.3d at 282 (Internal quote omitted).  In *Oran*, the Third Circuit went on to explain how the Court "fashioned a special rule for measuring materiality in the context of an efficient securities market."  *Id.*  The Court explained, in relevant part:

> [W]hen a stock is traded in an efficient market, the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock.  Because in an efficient market 'the concept of materiality translates into information that alters the price of the firm's stock,' if a company's disclosure of information has no effect on stock prices, 'it follows that the information disclosed ... was immaterial as a matter of law.'

*Id.* (quoting *Burlington*, 114 F.3d at 1425).

With these standards in mind, the Court finds that the new allegations in the SACC demonstrates a substantial likelihood that a reasonable Wyeth investor would have viewed Defendants' affirmative statements about AAB-001 as being material by affecting the total mix of information available to investors when making investment decisions.  *See id.*  Additionally, Lead Plaintiffs have sufficiently alleged that Wyeth's affirmative statements as contained in the May 21 Release and June 17 Release had a positive effect on stock prices, and thus would have been material to the reasonable Wyeth investor.  (*See* SACC ¶¶ 105-110).  In short, the Court finds that such allegations of materiality satisfy the first element in stating a 10b-5 claim, and

thus the amendment would not be futile.[6]

**IV.     CONCLUSION**

For the reasons set forth above, this Court recommends that Lead Plaintiffs' motion seeking leave to file the second amended consolidated complaint, pursuant to FED. R. CIV. P. 59(e) and 15(a), be **GRANTED**.  The Court further recommends that Lead Plaintiffs be permitted to file the second amended consolidated complaint by December 21, 2012.

The parties have fourteen (14) days from receipt hereof to file and serve objections.

       *s/Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States Magistrate Judge**

Date: December 5, 2012

---

[6] The Court notes that neither Judge Wigenton in the February 10th opinion, nor the parties in connection with the instant motion, address the remaining factors for stating a 10b-5 claim.  As such, to be fair, this Court's analysis on futility of the amendment is limited to addressing only the first factor regarding Lead Plaintiff's obligation to establish a misstatement or omission of material fact.  As noted above, this Court concludes that Lead Plaintiffs have satisfactorily established this element, and thus, their amendment is not futile on this basis.